**PEASE LAW, APC**
Bryan W. Pease (SBN 239139)
Parisa Ijadi-Maghsoodi, Esq. (SBN 273847)
3960 W. Point Loma Blvd., Suite H-2562
San Diego, CA 92110
Ph. (619) 723-0369 / (619) 991-9517
Email: bryan@peaselaw.org, parisa@peaselaw.org

Attorneys for Plaintiffs Steven Hubbard and Amy Baack

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| STEVEN HUBBARD and AMY BAACK,<br><br>　　　　　　Plaintiffs,<br>v.<br><br>CITY OF SAN DIEGO and DOES 1-10,<br><br>　　Defendants. | Case No. **'24CV0972 L    SBC**<br><br>**COMPLAINT** |
|---|---|

## JURISDICTION AND VENUE

1. This action arises under 42 U.S.C. §1983. The Court has jurisdiction pursuant to 28 U.S.C. §1331 and §1343.

2. Venue under 28 U.S.C. §1391 in this Court is proper as the events or omissions giving rise to the claims alleged occurred in San Diego County, which is within the Southern District of California. Additionally, all Defendants reside in San Diego County.

## PARTIES

3. Plaintiff Steven Hubbard is an individual residing in San Diego County.

4. Plaintiff Amy Baack is an individual residing in San Diego County.

5. Defendant City of San Diego is a charter city in San Diego County.

6. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named DOE Defendants is responsible in some manner for the acts, omissions, and damages alleged herein. Plaintiffs are unaware of the true names and capacities of the DOE Defendants, and, therefore, sue these Defendants under such fictitious names. Plaintiffs are informed and believe and thereon alleges that each of said fictitiously named Defendants was the agent, servant and employee of each and every other Defendant acting within the course and scope of his or her agency and employment, and with the knowledge, ratification and consent of each respective principal. Plaintiffs will seek leave to amend this Complaint when their true names and capacities have been ascertained.

## ALLEGATIONS OF FACT

7. Plaintiffs offer free yoga instruction in City parks and have done so for many years. Donations may be passively accepted and are by no means required.

8. On May 19, 2016, Deputy City Attorney Heather Ferbert, who is now running to be the next elected City Attorney of San Diego, wrote a memorandum of law claiming that yoga classes are not protected by the First Amendment when conducted in the City's parks and beaches.

9. Ferbert's memo was in direct response to a San Diego Superior Court Commissioner ruling that former San Diego Municipal Code ("SDMC") §63.0102 was unconstitutional both on its face and as applied to Plaintiff Hubbard offering such free yoga classes in City parks and having been cited for doing so under a previous version of the ordinance not specifically targeting yoga, but rather group size.

10. The Ferbert memo relied solely on *Dallas v. Stranglin* (1989) 490 U.S. 19, 25 and *Daly v. Harris* (Dist. of Hawaii 2002) 215 F.Supp.2d 1098, 1108 to claim that teaching yoga is not protected First Amendment activity. However, neither case had anything to do with teaching yoga or anything like it.

11. *Dallas* involved a challenge to an ordinance allowing licensing of privately owned teenage dance hall businesses in which admission was limited to those between the ages of 14 and 18, as well as parents, guardians, law enforcement, and dance-hall personnel. The U.S. Supreme Court held the ordinance—which applied to private businesses and not to free speech in a public forum—did not violate the First Amendment rights of these minors to associate with adults.

12. In *Daly,* the plaintiff challenged a fee charged to enter a marine conservation district and nature preserve. The court ruled that the First Amendment did not make this fee unconstitutional.

13. Neither case had anything to do with banning the teaching of yoga in parks. Yet, the Ferbert memo relied exclusively on these two cases under the heading, "Yoga Classes Would Not Likely be Considered Speech Protected by the First Amendment," in urging the City to *specifically* ban yoga in City parks as it finally did earlier this year.

14. On February 8, 2024, Deputy City Attorney Catherine Morrison wrote City Attorney Memorandum MS-59 to the Mayor and City Council entitled, "First Amendment Protection of Expressive Merchandise and Performances in Public Spaces in San Diego." This memo attached the Ferbert memo described above.

15. MS-59 was an analysis of potential First Amendment issues with a sidewalk vending ordinance proposed by Councilmember Jennifer Campbell's office.

16. Other than attaching the Ferbert memo regarding teaching yoga supposedly not being protected by the First Amendment, MS-59 only had one mention of the word "yoga," which was in a chart listing whether various activities fall under the category of "protected speech" or not, and providing legal citations.

17. This chart answered the question "no" regarding whether an instructor teaching yoga classes would be considered protected speech, and lumped it in with exercise classes and dog training classes. The only legal citations given for this assertion again were *Dallas* and *Daly,* which as noted above are both entirely inapposite.

18. At some point, Councilmember Campbell's proposal to regulate sidewalk vending had provisions specifically targeting yoga inserted into SDMC §63.0102.

19. It is unclear how and when these provisions specifically targeting the free teaching of yoga in City parks were added to this ordinance amendment, which was first introduced at the October 5, 2023 Community and Neighborhood Services Committee of the San Diego City Council by Councilmember Cambell to address the issue of sidewalk vending. Yoga was not mentioned in the staff report, agenda, or minutes of this meeting.

20. Similarly, when the issue came to City Council on February 27, 2024, the issue was agendized as "Municipal Code Amendments to Address Concerns With Sidewalk Vending, Commercial Activity and Expressive Activities on Public Property," with no mention of banning free teaching of yoga in City parks.

21. There appear to have been no town council or planning group recommendations on this surreptitiously inserted provision either, nor any community input or public comment whatsoever, because the general public and stakeholders were never given notice that this was even being considered.

22. Such lack of notice that SDMC §63.0102 would be amended to ban free teaching of yoga in City parks under the guise of regulating "sidewalk vending" violated Plaintiffs' procedural and due process rights afforded to them under the California Constitution.

23. While the letter to other councilmembers from the Office of

1  Councilmember Campbell, as well as the PowerPoint presentation presented by
2  Councilmember Campbell at the meeting did contain a single reference each to "yoga"
3  supposedly being an example of activity not falling under the category of free speech,
4  stemming from the chart in the MS-59 memo referenced above, banning yoga in City
5  parks was never stated as being a purpose or result of the sidewalk vending ordinance
6  that was being considered.

7      24.    Deputy City Attorney Ferbert was the deputy city attorney assigned to the
8  item when it came to City Council and was present for its passage. If at any point Ferbert
9  believed her 2016 memo was being misapplied here to *specifically* target and ban free
10 teaching of yoga in City parks, she could have raised this concern but did not do so.

11     25.    City parks are open to the general public and constitute a public forum.

12     26.    A time, place, or manner regulation may not "burden substantially more
13 speech than is necessary to further the government's legitimate interests." (*Ward v. Rock
14 Against Racism* (1989) 491 U.S. 781, 799.)

15     27.    The party seeking to limit the exercise of free speech bears the burden of
16 justifying the limitation. (*See, e.g., Bolger v. Youngs Drug Products Corp*. (1983) 463
17 U.S. 60, 71 n.20 ("The party seeking to uphold a restriction on commercial speech
18 carries the burden of justifying it."); *Kuba v. 1-A Agr. Ass'n* (9th Cir. 2004) 387 F.3d
19 850, 860 ("the Association … has difficulty meeting its burden regarding the
20 significance of its asserted interest."); *Lim v. City of Long Beach* (9th Cir. 2000) 217
21 F.3d 1050, 1054 ("the party seeking to restrict protected speech has the burden of
22 justifying that restriction."); *Snatchko v. Westfield LLC* (2010) 187 Cal.App.4th 469, 488
23 ("Westfield has not shown its … Rules are necessary to serve the interest of safety.").)

24     28.    "[A] content-neutral restriction—i.e., one which concerns the time, place,
25 or manner of speech—is subject to intermediate scrutiny." (*Ward v. Rock Against
26 Racism* (1989) 491 U.S. 781, 791.) "The restriction must (1) be narrowly tailored, (2)
27 serve a significant government interest, and (3) leave open ample alternative avenues for
28 communication of the information." (*Ibid*.)

29. A content-based restriction, such as the ban specifically targeting free teaching of yoga, is subject to strict constitutional scrutiny. (*Fashion Valley Mall, LLC v. National Labor Relations Bd.* (2007) 42 Cal. 4th 850, 865.) Such bans must be necessary to serve a compelling state interest and narrowly drawn to achieve that end. (*Id*. at 869.)

30. Plaintiffs are engaged in pure speech, teaching yoga to anyone who wishes to listen and participate. They are not charging fees, and they are not blocking or restricting access to any public space.

31. Passively accepting donations in a way that is not "inherently intrusive or potentially coercive" is similarly protected speech under California law. (*Fashion Valley Mall, supra*, at 869.)

32. The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." (*Elrod v. Burns* (1976) 427 U.S. 347, 373.)

33. Several yoga gatherings by Plaintiffs and others have already been shut down by City park rangers enforcing this new ordinance.

34. Hubbard has been written two citations for free teaching of yoga in a City park in Pacific Beach, and Baack has been threatened with citations if she keeps engaging in free teaching of yoga in a City park in Ocean Beach.

35. Unless restrained and enjoined by the Court, the City will continue violating the First Amendment rights of Plaintiffs, others similarly situated, and the general public.

## FIRST CAUSE OF ACTION
## 42 U.S.C. § 1983 – *Monell* claim
### (Against City of San Diego)

36. Plaintiffs re-allege and incorporate by reference all prior paragraphs of this Complaint as though each were set forth herein in full.

### Count 1: Facial Invalidity of SDMC §63.0102(c)(14)

37. SDMC §63.0102(c)(14) as now amended is facially unconstitutional.

38. This section bans providing of "services" without a permit, which is defined in §63.0102(b) as including "the provision of intangible items to a group of four persons or more at the same time that cannot be returned once they are provided. Examples include…yoga."

39. One exception in §63.0102(c)(14) is, "Except *expressive activity* authorized by Chapter 6, Article 3, Division 5 of this Code." (Italics in original.)

40. SDMC §63.0502 defines expressive activity as meaning "all forms of speech and expressive conduct," and then gives examples that include "performances" and "other items that are inherently communicative in nature and have only nominal value or purpose apart from its communication." Then there is an exception within this exception stating, "Expressive activity does not include…teaching yoga."

41. By specifically targeting the free teaching of yoga both in the definition of "services" as well as an exception to the exception for expressive activity, the ordinance is content-based and is therefore evaluated under strict constitutional scrutiny. Thus, in order to be constitutional, the ordinance must be narrowly tailored to achieve a compelling government interest.

42. The City does not have a compelling interest in banning the free teaching of yoga in City parks.

43. While the City claims a permit can be obtained for engaging in such activity, in practice the City refuses to issue any permits for this activity in any City park except Mission Bay Park, Balboa Park, and Liberty Station.

44. The City does not have a compelling interest in only granting permits for free teaching of yoga in these three areas of the City.

45. SDMC §63.0102(c)(14) is not narrowly tailored to achieve any government interest, let alone a substantial or compelling one.

46. This section now states in its entirety:

> Commercial Activity and Services. Except *expressive activity* authorized by Chapter 6, Article 3, Division 5 of this Code and *sidewalk*

7
COMPLAINT

> *vending* authorized by Chapter 3, Article 6, Division 1, it is unlawful to carry on or conduct commercial activity, to provide any *service*, or to solicit offers to purchase, barter, or to require someone to negotiate, establish, or pay a fee before providing a *service*, even if characterized as a donation, without the written consent of the City Manager. Written consent of the City Manager includes commercial activity and *services* allowed as part of a lease, permit, or other written permission from the City.

(Italics in original.)

47. The term "services" is defined in subsection (b), which provides:

> *Services* are activities involving the performance of work for others, the rental of furniture or equipment for an activity or event, or the provision of intangible items to a group of four persons or more at the same time that cannot be returned once they are provided. Examples include massage, **yoga**, dog training, fitness classes, equipment rental, and staging for picnics, bonfires or other activities.

(Italics in original, bold/underline added.)

48. By separating out "commercial activity" and "service" as two separate things that are banned in subjection (c)(14), the ordinance makes clear that teaching yoga is being targeted not as a commercial activity, but as a "service" which does not need to be commercial in order to be banned. This violates the First Amendment.

49. The definition of "services" makes this clear by specifically including "yoga" in subsection (b).

50. The ordinance further makes clear that free or donation-based, non-commercial teaching of yoga is being targeted by specifically excluding "yoga" from the definition of "expressive activity."

51. The ordinance also places unbridled discretion in the hands of the City Manager, i.e. the Mayor, to determine when and where yoga will be allowed in City parks. This makes the ordinance unconstitutional as well.

**Count 2: SDMC §63.0102 is Unconstitutional as Applied**

52. In practice, the Mayor's office has banned yoga in all but a few City parks through enforcement of this ordinance.

53. The Mayor's office has sent out teams of park rangers to harass, intimidate, threaten, and bully Plaintiffs and other yoga teachers to discontinue teaching yoga in City parks.

54. On May 18, 2024 and again June 1, 2024, park rangers wrote infraction tickets requiring Plaintiff Hubbard to appear in San Diego Traffic Court for arraignment on violation of SDMC §63.0102(c)(14).

55. The ticket written on June 1, 2024 is for violation of not only §63.0102(c)(14), stating "yoga" in the ranger's written description on the ticket, but also includes §63.0102(c)(15) and states, "set up any exhibition, give lecture" as the reason written by the ranger on the ticket.

56. The only thing Hubbard was doing that led to the issuance of this ticket was engaging in the free teaching of yoga in a City park as he had done regularly for the past 17 years.

57. SDMC §63.0102(c)(15) provides, "Shows. Except *expressive activity* authorized by Chapter 6, Article 3, Division 5, it is unlawful to set up, maintain, or give any exhibition, show, performance, lecture, concert, place of amusement, or concert hall without the written consent of the City Manager."

58. Thus, the City also considers the teaching of yoga to be a "lecture" which is unlawful by virtue of "yoga" being specifically exempted from the exceptions for "expressive activity" in the ordinance.

59. Plaintiff Hubbard typically teaches yoga classes in Pacific Beach and has done so for 17 years.

60. Plaintiff Amy Baack typically teaches yoga classes in Ocean Beach and has done so since 2021.

61. A photo of Baack teaching yoga in Sunset Cliffs Park recently is below:



62. On Wednesday, May 8, at 5:40p.m., Baack arrived at her usual teaching spot at Sunset Cliffs to teach her free Sunset Slow Flow class. Three park ranger trucks were parked on the cliff, barricading access to the stretch of land where Baack and her students usually gather.

63. There were three park rangers talking to a few of Baack's regular yoga students, who attend every class and look forward to this practice as one of the highlights of their stressful weeks. There were also other park rangers there, apparently as backup.

64. A photo of the park rangers parked on the cliff is below:



65. When Baack asked what was happening, the rangers informed her that a law has recently changed in San Diego that does not allow any yoga classes to occur (even for free) on any shoreline park in the area

66. The rangers did not have a copy of the law nor were they able to tell Baack what the law was. Instead they told her that if she returned, since this was her "warning," next time it would be a "criminal offense."

67. One of the rangers monologued at Baack condescendingly for over 20 minutes, evading her questions about why no one was informed about all this or given any warning. The ranger told Baack she was an "irresponsible leader" for not knowing about this law and that it was "all over the news," so she should have known about it.

68. These actions in threatening and intimidating Baack, and actually writing citations to Hubbard, being carried out by park rangers are directed, approved, and ratified by the Mayor, who has final policymaking authority for the City.

69. On May 17, 2024, counsel for Plaintiffs sent a cease and desist letter to the

Mayor and City Attorney regarding enforcement of this unconstitutional ordinance.

70. Neither responded, but the Mayor's office then cancelled a meeting that was to take place later that week between a member of the Mayor's staff and several community members including Plaintiffs who are concerned about the ordinance. The Mayor's office said it cancelled the meeting specifically because of the letter.

71. The City actually increased enforcement after the letter, as it was not until after receipt of the letter that rangers began issuing citations to Hubbard.

72. Since receipt of the letter, the Mayor's office has also been sending out the following canned response to anyone who inquires about this issue:

> Hello,
>
> Thank you for contacting me and providing your input on yoga and other commercial activities in our public parks.
>
> It is the City of San Diego's responsibility to ensure equitable and safe access to our parks, bays, and beaches for all users at all times. The City of San Diego's Municipal Code prohibits groups consisting of four or more people engaged in commercial recreational activities like yoga, fitness classes, and dog training from gathering in parks without a permit, and can only operate in certain designated areas. The applicable municipal code (SDMC 63.0102) has been in effect since 1993, and recent updates to the municipal code have clarified the activities for which necessary permitting applies and further outlines that it is unlawful to require someone to negotiate, establish, or pay a fee before providing a service, even if characterized as a donation.
>
> These updates went into effect March 29 and are in place to ensure these public spaces remain safe and accessible to all users at all times. Park Rangers, SDPD Officers, and City Lifeguards have the authority to enforce these codes to ensure public safety in San Diego's parks and beaches. Interested parties can access permit applications and information for various types of groups and activities on the Parks and Recreation Department's webpage.

Sincerely,

TODD GLORIA
Mayor
City of San Diego

73. The Mayor knows that Plaintiffs and other yoga instructors are not requiring anyone to pay a fee before participating in any of these free yoga classes being offered in City parks, and that Plaintiffs are providing such teaching and instruction for free, with donations being completely optional.

74. Yet, the Mayor continues to falsely characterize such free teaching of yoga as being a "commercial" activity and is instructing park rangers to continue to harass, intimidate, threaten, and issue citations to Plaintiffs and other yoga instructors who engage in such First Amendment protected activity in City parks.

75. Because the unconstitutional enforcement action is being directed, approved, and ratified by the Mayor, the City is directly liable for these constitutional violations under 42 U.S.C. §1983.

## SECOND CAUSE OF ACTION

## 42 U.S.C. § 1983 – Individual Liability

## (Against Does 1-5)

76. Plaintiffs re-allege and incorporate by reference all prior paragraphs of this Complaint as though each were set forth herein in full.

77. Does 1-5 are individual park rangers who have violated the First, Fourth, and Fourteenth Amendment rights of Plaintiffs by threatening to as well as issuing citations for teaching yoga in City parks.

78. Defendants Does 1-5 violated Plaintiffs' clearly established First Amendment rights to freedom of speech and assembly in threatening to and actually issuing citations to Plaintiffs for engaging in the free teaching of yoga in City parks.

79. Defendants Does 1-5 violated Plaintiffs' clearly established Fourteenth Amendment rights to freedom of movement in a public place by threatening Plaintiffs if

they engaged in free teaching of yoga in City parks.

80. Defendants Does 1-5 also violated Plaintiffs' clearly established Fourth Amendment rights to be free from unreasonable seizure of their persons by detaining and threatening Plaintiffs and issuing citations for engaging in free teaching of yoga in City parks.

81. Defendants Does 1-5 were at all relevant times acting under color of state law.

82. Plaintiffs were harmed by Defendants' actions.

83. Plaintiffs are entitled to damages and injunctive relief preventing such constitutional violations in the future.

## THIRD CAUSE OF ACTION
### 42 U.S.C. § 1983 – Supervisory Liability
### (Against Does 6-10)

84. Plaintiffs re-allege and incorporate by reference all prior paragraphs of this Complaint as though each were set forth herein in full.

85. Does 6-10 are supervisors who directed and/or ratified the violation of Plaintiffs' First, Fourth, and Fourteenth Amendment rights.

86. Does 6-10 acted under color of state law and set into motion a series of events that predictably led to the violation of Plaintiffs' First, Fourth, and Fourteenth Amendment rights.

87. The acts of Does 6-10's subordinates deprived Plaintiffs of their First, Fourth, and Fourteenth Amendment rights.

88. Does 6-10 directed their subordinates in the acts that deprived Plaintiffs of these rights.

89. Defendants Does 6-10 were at all relevant times acting under color of state law.

90. Plaintiffs were harmed by Defendants Does 6-10's actions.

91. Plaintiffs are entitled to damages and injunctive relief preventing such

constitutional violations in the future.

## FOURTH CAUSE OF ACTION

### Declaratory Relief

### (Against all Defendants)

92. Plaintiffs re-allege and incorporate by reference all prior paragraphs of this Complaint as though each were set forth herein in full.

93. There is an actual and justiciable controversy between the parties regarding whether Plaintiffs may continue teaching yoga for free or with optional donations in City parks as activity protected by the First Amendment.

94. A judicial declaration of the rights and obligations of the parties is necessary to ensure there are no future invasions of Plaintiffs' rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

(1) For a preliminary and permanent injunction preventing the City or any of its agents for enforcing SDMC §63.0102(c)(14) as unconstitutional on its face;

(2) For a preliminary and permanent injunction preventing the City or any of its agents for enforcing SDMC §63.0102(c)(15) as unconstitutional on its face;

(3) For a preliminary and permanent injunction preventing the City or any of its agents for enforcing SDMC §63.0102(c)(14) and (c)(15) as unconstitutional as applied to teaching yoga for free or with optional, passively accepted donations in City parks;

(4) For damages to be determined by the trier of fact, against all Defendants;

(5) For reasonable attorney's fees and costs and expenses of litigation, pursuant to United States Code §§ 1983-1988, and any other relevant statutory or case law, against all Defendants;

(6) For such other and further legal and equitable relief as the Court

deems just and proper.

Dated: June 3, 2024                               By:    s/ Bryan W. Pease
                                                        Bryan W. Pease, Esq.
                                                        Attorney for Plaintiffs