**PEASE LAW, APC**
Bryan W. Pease (SBN 239139)
Parisa Ijadi-Maghsoodi (SBN 273847)
3960 W. Point Loma Blvd., Suite H-2562
San Diego, CA 92110
Ph. (619) 723-0369 / (619) 991-9517
Email: bryan@peaselaw.org, parisa@peaselaw.org

Attorneys for Plaintiffs Steven Hubbard and Amy Baack

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| STEVEN HUBBARD and AMY BAACK,<br><br>    Plaintiffs,<br>v.<br><br>CITY OF SAN DIEGO and DOES 1-10,<br><br>    Defendants. | Case No. 24-CV-00972-L-SBC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TEMPORARY RESTRAINING ORDER** |
| --- | --- |

1

MEMORANDUM OF POINTS AND AUTHORITIES

# Table of Contents

I.   INTRODUCTION ........................................................................................5

II.  CITY'S POSITION ....................................................................................5

III. LEGAL STANDARD..................................................................................7

IV. FACTS .......................................................................................................7

V.  ARGUMENT ..............................................................................................8

    A.   Plaintiffs Meet the Standard for Preliminary Injunctive Relief........................8

        1.   Plaintiffs Are Likely to Succeed on the Merits .......................................8

        2.   Plaintiffs Will Suffer Irreparable Harm in the Absence of Preliminary Injunctive Relief....................................................................................11

        3.   The Balance of Equities Tips in Plaintiffs' Favor and the Injunction is in the Public Interest. ..................................................................................12

    B.   There is No Pending State Court Proceeding ..................................................12

    C.   Other Constitutional Violations Will Be Briefed in Due Course ...................14

    D.   The City's Motion to Dismiss Shows the City Has No Legal Basis...............14

VI. CONCLUSION .........................................................................................17

MEMORANDUM OF POINTS AND AUTHORITIES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Table of Authorities

**Cases**

*ACLU v. City of Las Vegas* (9th Cir. 2006) 466 F.3d 784 ...................................................10

*Alliance For The Wild Rockies v. Cottrell* (9th Cir. 2011) 632 F.3d 1127 ..........................7

*Best Supplement Guide, LLC v. Newsom*, 2020 U.S. Dist. LEXIS 90608 .................14, 16

*Bolger v. Youngs Drug Products Corp.* (1983) 463 U.S. 60 ............................................10

*City of Chicago v. Morales* (1999) 527 U.S. 41 .............................................................14

*Consol. Edison Co. v. Public Serv. Comm'n* (1980) 447 U.S. 530 ..................................10

*Dallas v. Stranglin* (1989) 490 U.S. 19 ..........................................................................8

*Daly v. Harris* (Dist. of Hawaii 2002) 215 F.Supp.2d 1098 ...........................................9

*Dubinka v. Judges of the Superior Court* (9th Cir. 1994) 23 F.3d 218 ...........................12

*Edge v. City of Everett* (9th Cir. 2019) 929 F.3d 657 ....................................................15

*Elrod v. Burns* (1976) 427 U.S. 347 ...............................................................................11

*Kuba v. 1-A Agr. Ass'n* (9th Cir. 2004) 387 F.3d 850.....................................................10

*Lim v. City of Long Beach* (9th Cir. 2000) 217 F.3d 1050 ..............................................10

*Lockheed Missile & Space Co. v. Hughes Aircraft Co.* (N.D. Cal. 1995) 887 F. Supp. 1320 ...............................................................................................................................7

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n* (1982) 457 U.S. 423 ............12

*Sanderson v. Niemann* (1941) 17 Cal. 2d 563 ...............................................................13

*Steel MMA, LLC v. Newsom,* 2021 U.S. Dist. LEXIS 37709....................................14, 16

*Texas v. Johnson* (1989) 491 U.S. 397 ...........................................................................15

*United States v.Washington* (9th Cir. 2004) 387 F.3d 1060............................................14

*Vill. of Schaumburg v. Citizens for a Better Env't* (1980) 444 U.S. 620 ..........................11

*Ward v. Rock Against Racism* (1989) 491 U.S. 781 ...................................................9, 10

*Younger v. Harris* (1971) 401 U.S. 37............................................................................12

3

**Statutes**

28 USCS §2283 ........................................................................................12

SDMC §63.0102 .............................................................5, 8, 10, 11, 13, 16, 17

SDMC §63.0502 ...........................................................................5, 16, 17

MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs seek a temporary restraining order (TRO) and order to show cause why a preliminary injunction should not issue enjoining the City of San Diego, and anyone acting in concert with it, from infringing on the First Amendment rights of Plaintiffs or any other member of the public by prohibiting the teaching of yoga in City parks.

Amendments passed earlier this year to SDMC §63.0102(c)(14) specifically target teaching yoga as requiring a permit if four or more persons are involved, regardless of whether or not the instructor accepts donations or charges a fee. In practice, the City only grants permits in a few parks, and none in shoreline parks.

This is not a content-neutral time, place, and manner regulation. Rather, it is content-based, explicitly targeting "teaching yoga" in a public forum.

Specifically, Plaintiffs seek to immediately enjoin the City from (1) enforcing the inclusion of the term "yoga" within the definition of "services" in San Diego Municipal Code (SDMC) §63.0102, and (2) enforcing the exclusion of "teaching yoga" from the definition of "expressive activity" in SDMC §63.0502.

Both ordinances are attached as Exhibits 18 and 19, respectively, to Plaintiffs' Request for Judicial Notice (RJN) served and filed herewith.

Such a narrow and targeted injunction would not impact overall enforcement of this newly amended ordinance, which was docketed on the city council agenda and presented to the public solely as a sidewalk vending regulation and would continue to serve this overall function. (Declaration of Attorney Bryan Pease ("Pease Decl."), ¶¶9-31.)

## II.    CITY'S POSITION

On June 6, 2024, Plaintiffs notified the City they would be seeking a TRO and preliminary injunction unless the City would pause enforcement of the yoga ban to avoid violating the First Amendment while the case is being reviewed. (Pease Decl., ¶3.)

On June 10, 2024, the deputy city attorney handling the case wrote back stating the City would not be pausing enforcement of the yoga ban. Counsel for the parties then

met and conferred by phone that day regarding Plaintiffs' planned TRO request. (Pease Decl., ¶4.)

Plaintiffs and others continued attempting to obtain clarification regarding the City's yoga ban applying not just to commercial activity, but also to free and donation-based teaching of yoga in City parks. Since the filing of this case, affected individuals have spoken at city council meetings, attempted to reach city councilmembers and the mayor, and reached out to community planning groups, all to no avail. (Pease Decl., ¶5.)

On June 16, 2024, the Wall Street Journal published a story on the controversy and this lawsuit. (https://www.wsj.com/us-news/yoga-san-diego-outdoor-class-crackdown-1b1aa291) This did not cause the City to change its position in any way.

On June 22, 2024, the Yoga Journal published a story about this case which initially indicated that a permit could be obtained to teach yoga in shoreline parks, but this statement was corrected two days later after further inquiry. (https://www.yogajournal.com/teach/yoga-teachers-sue-san-diego/)

On June 25, 2024, the City filed its motion to dismiss, showing that the City is not backing down from its position, and that the basis for that position is legally and factually flawed. (ECF No. 5.)

On July 1, 2024 at 9:30 a.m., Plaintiffs' counsel sent an email to the deputy city attorney handling this case again reiterating that Plaintiffs would be filing this ex parte application. Counsel asked if the city attorney would like additional time beyond the two days provided for in this Court's chamber rules to respond to an ex parte application, so that Plaintiffs could indicate in the ex parte papers if a longer briefing schedule was anticipated or requested, or if the Court should simply be able to rule at any point following the City's response.

Plaintiffs' counsel also copied the Assistant City Attorney and City Attorney as listed in the caption of the City's papers, in order to again further ensure the City is aware at the highest levels of the policy ramifications of the City's actions here. (Pease Decl., ¶32.)

At 1:00 p.m. the same day, the deputy city attorney responded stating, "I am certainly willing and able to respond to your ex parte motion by Wednesday." (Pease Decl., ¶33, Ex. 1.)

As the City has already briefed its position in its motion to dismiss, and is ready and able to file an opposition to the present ex parte application no later than Wednesday, July 3, 2024, Plaintiffs respectfully request that the Court issue a ruling at any point after that rather than setting an additional briefing schedule.

## III.   LEGAL STANDARD

"The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction." (*Lockheed Missile & Space Co. v. Hughes Aircraft Co.* (N.D. Cal. 1995) 887 F. Supp. 1320, 1323.)

A district court in the Ninth Circuit may issue a temporary restraining order or preliminary injunction if (1) the plaintiff is likely to succeed on the merits, (2) the plaintiff is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities or harms tips in the plaintiff's favor, and (4) the injunction is in the public interest. (*Alliance For The Wild Rockies v. Cottrell* (9th Cir. 2011) 632 F.3d 1127, 1135-1138.)

The Ninth Circuit also uses a "sliding scale" approach, under which the elements of the preliminary-injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another. Under the Ninth Circuit's sliding-scale approach, sometimes called a "serious questions" test, a preliminary injunction is appropriate when a plaintiff demonstrates that serious questions going to the merits are raised and that the balance of hardships tips sharply in the plaintiff's favor. The plaintiff must also satisfy the other factors of the test, including the likelihood of irreparable harm. (*Alliance, supra,* 632 F.3d 1127 at 1131.)

## IV.   FACTS

Yoga is much more than a physical practice, and teaching yoga involves imparting the philosophy of yoga and other messages that are understood by the listener.

7

(Declaration of Amy Baack ("Baack Decl."), ¶¶7-8, 12-13.)

Offering free and donation-based classes in public parks is a way to involve the public in the practice of yoga and allow those who cannot afford to join a private studio or private session prices a way to still learn about the practice of yoga. (Baack Decl., ¶¶2, 9; Declaration of Steven Hubbard ("Hubbard Decl."), ¶3.)

Many people have learned about yoga for the first time in these outdoor classes the City has now banned. (Baack Decl., ¶11.)

## V.   ARGUMENT

### A.   Plaintiffs Meet the Standard for Preliminary Injunctive Relief

#### 1.   Plaintiffs Are Likely to Succeed on the Merits

The City has recently begun enforcing an amendment to SDMC §63.0102(c)(14)—passed by the city council earlier this year—specifically banning the teaching of yoga in City parks.

There was no public notice that the City would be taking this action, as the ordinance amendment was docketed on the city council agenda as a sidewalk vending ordinance, and there was only a passing reference to yoga in the staff report. (Pease Decl., ¶¶10-30.)

SDMC §63.0102(c)(14) now requires a permit to engage in any of the following three distinct categories of activity: 1) "commercial activity," 2) "provide any service," and 3) "to require someone to negotiate, establish, or pay a fee before providing a service, even if characterized as a donation."

The newly amended ordinance specifically defines "yoga" as a "service" in §63.0102(b), so it does not matter if an individual is not engaged in commercial activity or even accepting donations to teach yoga. The mere act of "providing" yoga in a City park is prohibited under the clear wording of this new ordinance, and this is also the manner the City is applying the ordinance. (Baack Decl., ¶17; Hubbard Decl., ¶9.)

Further, the exception for "expressive activity" explicitly labels *teaching* yoga unprotected speech, because the definition of expressive activity in the ordinance

specifically excludes "teaching yoga." (SDMC §63.0105.)

In passing the ordinance with this language, the City relied solely on *Dallas v. Stranglin* (1989) 490 U.S. 19, 25 and *Daly v. Harris* (Dist. of Hawaii 2002) 215 F.Supp.2d 1098, 1108 to claim that teaching yoga is not protected First Amendment activity. (Pease Decl., ¶18.) However, neither case had anything to do with teaching yoga or anything like it.

*Dallas* involved a challenge to an ordinance allowing licensing of privately owned teenage dance hall businesses in which admission was limited to those between the ages of 14 and 18, as well as parents, guardians, law enforcement, and dance-hall personnel. The U.S. Supreme Court held the ordinance—which applied to private businesses and not to free speech in a public forum—did not violate the First Amendment rights of these minors to associate with adults.

In *Daly,* the plaintiff challenged a fee charged to enter a marine conservation district and nature preserve. The court ruled that the First Amendment did not make this fee unconstitutional.

Neither case had anything to do with banning the teaching of yoga in parks. Yet, the City relied exclusively on these two cases in a city attorney legal memo under the heading, "Yoga Classes Would Not Likely be Considered Speech Protected by the First Amendment," in deciding to *specifically* ban yoga in City parks.

A time, place, or manner regulation may not "burden substantially more speech than is necessary to further the government's legitimate interests." (*Ward v. Rock Against Racism* (1989) 491 U.S. 781, 799.)

"The government may place reasonable time, place, and manner restrictions on speech. However, these restrictions must be justified without reference to the protected speech's content. They must be content-neutral and narrowly tailored to serve a significant government interest, leaving open ample alternative channels of expression." (*ACLU* at 792.)

"A content-based regulation, on the other hand, is 'presumptively

9

MEMORANDUM OF POINTS AND AUTHORITIES

unconstitutional' [Citation], and subject to strict scrutiny [citation]. 'Content-based regulations pass constitutional muster only if they are the least restrictive means to further a compelling interest.' [Citation]." (*Ibid.*)

The party seeking to limit the exercise of free speech bears the burden of justifying the limitation. (*See, e.g., Bolger v. Youngs Drug Products Corp.* (1983) 463 U.S. 60, 71 n.20 ("The party seeking to uphold a restriction on commercial speech carries the burden of justifying it."); *Kuba v. 1-A Agr. Ass'n* (9th Cir. 2004) 387 F.3d 850, 860 ("the Association … has difficulty meeting its burden regarding the significance of its asserted interest."); *Lim v. City of Long Beach* (9th Cir. 2000) 217 F.3d 1050, 1054 ("the party seeking to restrict protected speech has the burden of justifying that restriction."))

"[A] content-neutral restriction—i.e., one which concerns the time, place, or manner of speech—is subject to intermediate scrutiny." (*Ward v. Rock Against Racism* (1989) 491 U.S. 781, 791.) "The restriction must (1) be narrowly tailored, (2) serve a significant government interest, and (3) leave open ample alternative avenues for communication of the information." (*Ibid*.)

"But when regulation is based on the content of speech, governmental action must be scrutinized more carefully…a constitutionally permissible time, place, or manner restriction may not be based upon either the content or subject matter of speech." (*Consol. Edison Co. v. Public Serv. Comm'n* (1980) 447 U.S. 530, 536.)

Not only does the recent amendment to SDMC §63.0102 specifically targeting the teaching of yoga fail to pass the intermediate scrutiny test; it is also impermissibly content-based, singling out "teaching yoga," and appears to be based on forces within the City disagreeing with the teaching of yoga in a public forum. (RJN, Ex. 2.)

Plaintiffs are engaged in pure speech, teaching yoga to anyone who wishes to listen and participate. They are not charging fees, and they are not blocking or restricting access to any public space. (Hubbard Decl., ¶¶3, 9; Baack, ¶¶4, 6, 9.)

Nor does accepting donations alter the equation. "It is beyond dispute that

solicitation is a form of expression entitled to the same constitutional protections as traditional speech." (*ACLU v. City of Las Vegas* (9th Cir. 2006) 466 F.3d 784, 792.)

"Our cases long have protected speech even though it is in the form of a solicitation to pay or contribute money." (*Vill. of Schaumburg v. Citizens for a Better Env't* (1980) 444 U.S. 620, 633 (cleaned up).)

The fact that the City is targeting speech here and not merely conduct that may have expressive value is also made clear by a park ranger citing Hubbard not only for violation of §63.0102(c)(14) regarding providing "services," but also §63.0102(c)(15) regarding giving a "lecture." (Declaration of Steven Hubbard ("Hubbard Decl."), ¶8.) The only thing Hubbard was doing at the time that led to the issuance of the ticket was teaching yoga in a City park. (Hubbard Decl., ¶9.)

## 2.  Plaintiffs Will Suffer Irreparable Harm in the Absence of Preliminary Injunctive Relief

The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." (*Elrod v. Burns* (1976) 427 U.S. 347, 373.)

Several yoga gatherings by Plaintiffs and others have already been shut down by City park rangers enforcing this new ordinance. Park rangers have issued Hubbard two appearance tickets for free teaching of yoga in a City park in Pacific Beach, and Baack has been threatened with such tickets if she keeps engaging in free teaching of yoga in a City park in Ocean Beach. (Hubbard Decl., ¶7; Baack Decl., ¶15-20.)

Unless restrained and enjoined by the Court, the City will continue violating the First Amendment rights of Plaintiffs, others similarly situated, and the general public. (Declaration of Laura Monk, ¶6.)

Plaintiffs are suffering irreparable harm due to the ongoing violation of their First Amendment rights. (Hubbard Decl., ¶13; Baack Decl., ¶24.)

11

MEMORANDUM OF POINTS AND AUTHORITIES

### 3.  The Balance of Equities Tips in Plaintiffs' Favor and the Injunction is in the Public Interest.

Finally, the balance of equities tips sharply in Plaintiffs' favor, and the public interest favors an injunction, because there is no harm to the public in allowing this peaceful, non-intrusive, and longstanding use of public parks to continue until this matter may be fully heard on the merits.

The City has been turning a blind eye to commercial, members-only yoga and fitness classes on Mission Beach put on by Fit Athletic, which owns a major gym nearby. This indicates that the City has no legitimate interest in actually prohibiting this activity but only wishes to do so when free or donation-based yoga instruction is being offered. (Hubbard Decl., ¶¶10-12.)

Additionally, there is no indication in the legislative history of any intent for these ordinance amendments to target the teaching of yoga in City parks at all. The only reference to "yoga" is in a couple of documents in a list of activities stating whether such activities are supposedly considered protected speech or not. (Pease Decl., ¶30.)

Accordingly, in balancing the equities for a temporary restraining order or preliminary injunction, it should be clear that the City has very little, if any, interest in enforcing its ban on teaching yoga in City parks and beaches, which the public and city councilmembers themselves appear to have been given no notice of whatsoever, other than buried in the language of the ordinance itself, with the stated purpose of the ordinance having been to address the separate issue of sidewalk vending. (Pease Decl., ¶31.)

### B.   There is No Pending State Court Proceeding

Although the City has not raised this issue yet in meet and confer discussions or in its motion to dismiss, the City may erroneously assert in opposition that Plaintiffs are seeking to enjoin ongoing state court proceedings, as a way to avoid interim injunctive relief.

Under principles of comity and federalism as explained in *Younger v. Harris*

(1971) 401 U.S. 37, 43-54, federal courts generally do not interfere with ongoing state court proceedings by granting injunctive or declaratory relief except under special circumstances.

Younger abstention applies when (1) state proceedings, judicial in nature, are pending; (2) the state proceedings involve important state interests; and (3) the state proceedings afford adequate opportunity to raise the constitutional issue. (Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n (1982) 457 U.S. 423, 432; Dubinka v. Judges of the Superior Court (9th Cir. 1994) 23 F.3d 218, 223.

Additionally, the Anti-Injunction Act, 28 USCS §2283, provides: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

In the present case, there are no pending state court proceedings, and hence neither Younger nor 28 USCS § 2283 are implicated.

While City park rangers have issued appearance tickets to Hubbard, these are merely for Hubbard to appear in traffic court to find out if the city attorney is filing charges, in  which case there would be an arraignment. Currently, no charges have been filed, and there are therefore no pending state court proceedings.

The issuance of these appearance tickets to Hubbard and threats to issue them to Baack is evidence that the dispute is not conjectural or hypothetical, but rather is concrete and justiciable. City park rangers are actively preventing Plaintiffs from engaging in First Amendment protected speech in a public forum and threatening Plaintiffs with additional appearance tickets if they do not comply.

Even if the city attorney did decide to file charges on the two appearance tickets park rangers issued to Hubbard, this would not invoke Younger abstention or the Anti-Injunction Act, because Plaintiffs are not seeking to enjoin any such prosecution. Should the city attorney decide to prosecute, such prosecutions will be defended. However, Plaintiffs are bringing the present case to enjoin ongoing and future violations of their

First Amendment rights, not to enjoin any prosecution regarding past acts.

The city attorney's May 19, 2016 memorandum regarding the effect of a San Diego Superior Court Commissioner finding a prior version of SDMC §63.0102(b)(24) unconstitutional on its face and as applied to teaching of yoga in parks also recognizes the "Commissioner's findings are conclusive with regard to the specific citations and allegations at issue in Mr. Hubbard's case, but do not apply to future citations issued by the City because they are not binding legal precedent." (Request for Judicial Notice (RJN), Ex. 2, p.000012.)

### C.    Other Constitutional Violations Will Be Briefed in Due Course

This TRO application only concerns the First Amendment, violation of which constitutes irreparable harm, and which falls under the *Monell* claim brought against the City regarding the facial invalidity of the ordinance, as well as the instructions to enforce the ordinance in this manner coming from a final policy maker for the city, i.e. the Mayor and City Attorney.

However, Plaintiffs are also likely to prevail on their Fourth and Fourteenth Amendment claims, which they will brief in due course.

The Doe Defendant park rangers also violated Plaintiffs' Fourth Amendment rights by detaining and in some cases issuing them citations. (*See United States v. Washington* (9th Cir. 2004) 387 F.3d 1060, 1068.)

Doe Defendant park rangers also violated Plaintiffs' Fourteenth Amendment rights to remain in a place of their choosing. (*See City of Chicago v. Morales* (1999) 527 U.S. 41, 54.)

An injunction as to the First Amendment issues against the City will also prevent future violations of Fourth and Fourteenth Amendment rights by park rangers, so it is not necessary to fully brief these other constitutional violations at this stage.

### D.    The City's Motion to Dismiss Shows the City Has No Legal Basis

The City's motion to dismiss relies primarily on a health restriction case during the pandemic in which this Court found private gyms "failed to establish that the First

MEMORANDUM OF POINTS AND AUTHORITIES

Amendment protects their operation of gyms or that working out/exercising/personal training indoors in a gym is speech or expressive activity protected by the First Amendment." (*Steel MMA, LLC v. Newsom,* 2021 U.S. Dist. LEXIS 37709, *7.)

*Steel* is inapposite because it is limited to activities inside a commercial gym which requires a membership fee to enter, not teaching yoga in a public forum.

The City also relies on *Best Supplement Guide, LLC v. Newsom*, 2020 U.S. Dist. LEXIS 90608, which held, "The Court lacks any authority for the proposition that operating a gym implicates the First Amendment's free speech protections." (*Id.* at *11.)

Again however, teaching yoga in a public forum is expressive activity protected by the First Amendment and is not the same thing as "operating a gym."

The City also ignores that teaching yoga is pure speech, i.e. the instructor is literally speaking and the students are listening. Yet the City relies on cases holding that certain *conduct* is not sufficiently expressive to warrant First Amendment protection.

For instance, the City cites *Edge v. City of Everett* (9th Cir. 2019) 929 F.3d 657, which analyzed *conduct*, not speech. "The outcome of this case turns on the plaintiffs' contention that the act of wearing almost no clothing while serving coffee in a retail establishment constitutes speech." (*Id.* at 669.)

Not surprisingly, the Ninth Circuit held, "Because wearing pasties and g-strings while working at Quick-Service Facilities is not 'expressive conduct' within the meaning of the First Amendment, the Dress Code Ordinance does not burden protected expression." (*Ibid.*)

*Edge* is inapposite because Plaintiffs here are engaged in pure speech, not conduct having nothing to do with speech.

*Edge* also quoted *Texas v. Johnson* (1989) 491 U.S. 397, as noted by the City. This was the high court's seminal flag burning case, striking down a law against desecration of the U.S. flag. Again the issue there was conduct, not pure speech, and in *Texas* the conduct, i.e. flag burning, was sufficiently imbued with communicative aspects that it was protected under the First Amendment.

15

MEMORANDUM OF POINTS AND AUTHORITIES

Thus, under the City's argument, Plaintiffs could stand in the exact same location and burn a flag, but the minute they start telling anyone around how to practice yoga, they are no longer engaged in protected speech and can be cited or arrested.

The City acknowledges Plaintiffs were teaching yoga "outdoors and on public throughfares [sic]," but claims such teaching is not protected because it is "exactly the same activity Plaintiffs would engage in if they were to conduct it indoors, in a gym, and with the same yogis who now attend their classes on the City's beaches." (ECF No. 5-1, p.8:24-27.)

However, finding that conduct in a private commercial setting is not protected by the First Amendment is not a basis on which to find speech in a public forum is unprotected.

Additionally, the City's argument is factually incorrect, as teaching yoga for free in a public forum exposes a larger audience to this message than would benefit from it otherwise, as many people are intimidated at the thought of joining a closed indoor yoga class. (Baack Decl., ¶9.) Plaintiffs specifically choose to engage in this speech in a public forum in order to share the message of yoga with a wider audience. (*Ibid*; Hubbard Decl., ¶3.)

The City's argument fails legally as well, because nothing in *Steel MMA* or *Best Supplement Guide* dealt with teaching yoga. Both cases were simply about operating commercial, indoor gyms, and whether such commercial facilities could remain open despite public health threats at the time.

The City contends, "Municipal Code section 63.0102 does not, within its text, regulate speech. What it does regulate, but not ban, is commercial activity." (ECF No. 5-1, p.10:5-6.) Both contentions are erroneous.

SDMC §63.0102 does within its text regulate speech, because it defines "services" as "provision of intangible items" including specifically, "yoga." As explained in the declarations submitted herewith, Plaintiffs' provision of yoga to the public for free or with optional donations involves pure speech—i.e. words being spoken—in a public

16

MEMORANDUM OF POINTS AND AUTHORITIES

forum. These words are not merely instructing students on what poses to engage in, but also communicate the philosophy of yoga. (Hubbard Decl., ¶¶2-3, Baack Decl., ¶¶7-13.)

Further, SDMC §63.0502 specifically excludes "*teaching* yoga"—pure speech— from the definition of "expressive activity" to which SDMC §63.0102 does not apply. Thus, the text of SDMC §63.0102 does in fact regulate speech.

Regarding regulation of "commercial activity," while SDMC §63.0102 does this *also*, that is a separate provision from the portion banning the providing of "services" such as "yoga," and "teaching yoga" as stated in SDMC §63.0502.

Thus, while SDMC §63.0102(c)(14) *also* makes it "unlawful to carry on or conduct commercial activity," as well as "to solicit offers to purchase, barter, or to require someone to negotiate, establish, or pay a fee before providing a service," this is in *addition to* the functionally separate ban on even just "providing a service."

The injunction sought by Plaintiffs would not affect the City's ability to enforce the other two categories prohibited by §63.0102(c)(14), i.e. "commercial activity" or charge "a fee before providing a service." Nor would it affect the City's ability to enforce the ordinance as to providing other "services" even without charging a fee, which do not involve expressive activity. Plaintiffs only seek to enjoin the City from enforcing a ban on "teaching yoga" in parks.

## VI.    CONCLUSION

For the foregoing reasons, a temporary restraining order and preliminary injunction should be granted, enjoining the City during the pendency of this action from (1) enforcing the inclusion of the term "yoga" within the definition of "services" in San Diego Municipal Code (SDMC) §63.0102, and (2) enforcing the exclusion of "teaching yoga" from the definition of "expressive activity" in SDMC §63.0502.

Dated: July 1, 2024                          By:    s/ Bryan W. Pease
                                                     Bryan W. Pease, Esq.
                                                     Attorney for Plaintiffs