MARA W. ELLIOTT, City Attorney
M. TRAVIS PHELPS, Assistant City Attorney
MANUEL ARAMBULA, Deputy City Attorney
California State Bar No. 289718
    Office of the City Attorney
    1200 Third Avenue, Suite 1100
    San Diego, California 92101-4100
    Telephone: (619) 533-5800
    Facsimile: (619) 533-5856

Attorneys for Defendant City of San Diego

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN HUBBARD and AMY BAACK, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF SAN DIEGO and DOES 1-10, <br><br> Defendants. | Case No. 24-cv-00972 CAB MMP <br><br> **DEFENDANT CITY OF SAN DIEGO'S POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' REQUEST FOR A TEMPORARY RESTRAINING ORDER** <br><br> **[Fed. R. Civ. P. 65]** <br><br> Date: July 12, 2024 <br> Judge: Hon. Cathy Ann Bencivengo <br> Court: 15A <br> Trial: Not Set |

## TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................5

II.   STANDARD OF REVIEW .........................................................................................7

III.   ARGUMENTS .............................................................................................................7

    a. **Plaintiffs have Failed to Demonstrate that the First Amendment Applies to their Claims** ...............................................................................................................7

    b. **Plaintiffs Cannot Show Irreparable Injury** ...............................................................11

    c. **Plaintiffs' "As Applied" Challenge Fails because Municipal Code section 63.0102 was not Enforced in a Discriminatory Matter** ......................................................12

    d. **The Grant of a TRO is Not in the Public's Interest** ..................................................13

    e. **The Challenged Ordinance is an Appropriate Time, Place, and Manner Restriction** .............................................................................................................14

IV.   CONCLUSION ..........................................................................................................15

# **TABLE OF AUTHORITIES**

**Cases**

*Am. Trucking Ass'ns v. City of Los Angeles*
  559 F.3d 1046, 1052 (9th Cir. 2009) ................................................................... 7

*Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 706 (1986) ............................................. 6, 7

*B & L Productions v. Newsom* 104 F.4th 108 (9th Cir. 2024) ..................................... 6, 7

*CityFed Fin. Corp. v. Office of Thrift Supervision*
  58 F.3d 738, 747 (D.C.Cir.1995) ....................................................................... 12

*Clark v. Cmty. For Creative Non-Violence*
  468 U.S. 288, 293 n.5 (1984) ......................................................................... 5, 15

*Drakes Bay Oyster Co. v. Jewell*
  747 F.3d 1073, 1092 (9th Cir. 2014.) ................................................................ 13

*Elrod v. Burns*
  427 U.S. 347, 373 (1976) ................................................................................. 11

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*
  415 U.S. 423, 439 (1974) ................................................................................. 13

*HomeAway.com, Inc. v. City of Santa Monica*
  918 F.3d 676, 685 (9th Cir. 2019) ...................................................................... 9

*Int'l Franchise Ass'n v. City of Seattle*
  803 F.3d 389, 408 (9th Cir. 2015) ............................................................... 6, 7, 8

*League of Wilderness Defs./Blue Mountains Biodiversity Project. v. Connaughton*
  752 F.3d 755, 756 (9th Cir. 2014) .................................................................... 13

*Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*
  887 F. Supp. 1320, 1323 (N.D. Cal. 1995) ......................................................... 7

*Munaf v. Geren*
  553 U.S. 674, 689 (2008) .................................................................................. 7

*Naegele v. Albers*
  843 F. Supp2d 123, 129 (2012.) ....................................................................... 12

*Sorrell v. IMS Health Inc.*
  564 U.S. 552, 567 (2011) ........................................................................ 8, 9, 10

*Steel MMA, LLC v. Newsom*,
  Case No.: 21-CV-49-CAB-AGS, 2021 WL 778654 (S.D. Cal. Mar 01, 2021) ......... 10

*Sundance Saloon, Inc. v. City of San Diego*
  213 Cal. App.3d 807, 817 (1989) ..................................................................... 12

Document Number: 3711238         3

24-cv-00972 CAB-MMP

*Turner Broad. Sys., Inc. v. F.C.C.*
    520 U.S. 180, 189 (1997) ............................................................................................... 11

*United States v. O'Brien*
    391 U.S. 367, 377 (1968) ............................................................................................... 16

*Ward v. Rock Against Racism*
    491 U.S. 781, 791(1989) ............................................................................................ 6, 11

*Weinberger v. Romero-Barcelo*
    456 U.S. 305, 312 (1982) ............................................................................................... 13

*Winter v. Natural Resources Defense Council*
    555 U.S. 7, 22 (2008) ................................................................................................. 7, 11

**Statutes**

San Diego Municipal Code § 63.0102(c)(14) ..................................................................... 5, 7, 8
San Diego Municipal Code § 63.0102(a) ............................................................................ 10, 14

**Rules**

Fed R. Civ. P. 12(b)(6) ............................................................................................................. 5
Fed R. Civ. P. 65 ................................................................................................................... 5, 7
Fed. R. Civ. P. 201(a) ............................................................................................................... 9

Defendant City of San Diego (City) respectfully submits this Memorandum of Points and Authorities in opposition to Plaintiffs' request for a Temporary Restraining Order (TRO). (Doc. No. 6-1.) Plaintiffs Steven Hubbard and Amy Baack (Plaintiffs) have filed a request for a TRO, presumably under the authority of Fed R. Civ. P. 65.[1] The City will show that Plaintiffs are not entitled to a TRO because they are unlikely to prevail in their underlying lawsuit and because they cannot establish any of the requirements necessary for this Court to grant Plaintiffs' request for a TRO.

## I. INTRODUCTION

1. Plaintiffs are yoga instructors who "offer free yoga instruction in City parks and have done so for many years." (Doc. No. 1 at ¶ 7.) As a result of the City's enactment and enforcement of San Diego Municipal Code § 63.0102(c)(14) (the "Challenged Ordinance"), Plaintiffs contend in their original complaint (OC) and in their TRO that the City is abridging their First Amendment rights by limiting or banning the teaching of yoga. (Doc. No. 1 at ¶ 35; Doc. No. 6-1 at p. 5.) The Challenged Ordinance regulates commercial activity on City property without reference to the content of the commercial activity or speech. Plaintiffs claim, without making a plausible effort to establish, that "teaching yoga" is expressive conduct protected by the First Amendment.

2. As the party making the claim that their conduct or speech is expressive, Plaintiffs bear the burden "to demonstrate that the First Amendment even applies." *Clark v. Cmty. For Creative Non-Violence*, 468 U.S. 288, 293 n.5 (1984). Despite now having filed two requests for relief from the Challenged Ordinance, Plaintiffs have failed to address whether the First Amendment applies to their conduct and, if so, why.

---

[1] Plaintiffs do not cite to any statute as the basis for their TRO and, if they are proceeding under Rule 65, they also fail to address the bond requirement under subd. (c) of Rule 65.

3. Plaintiffs' primary claim, without further explanation or analysis, is that "teaching yoga is pure speech [because] the instructor is literally speaking and the students are listening." (Doc. No. 6-1 at p. 15.) Plaintiffs cite to affidavits they have filed with their TRO for this proposition, but do not cite to any legal authority that even suggests that teaching yoga, or any sufficiently similar activity, has ever been found to be "pure speech." (*See Id.*) This is the extent of Plaintiffs' demonstration that the First Amendment applies to their TRO and lawsuit. This is ultimately a showing Plaintiffs will not be able to make because "[t]he First Amendment only applies when 'conduct with a 'significant expressive element' drew the legal remedy or the [ordinance] has the inevitable effect of 'singling out those engaged in expressive activity.'" *B & L Productions v. Newsom*, 104 F.4th 108 (9th Cir. 2024) (citing *Int'l Franchise Ass'n v. City of Seattle*, 803 F.3d 389, 408 (9th Cir. 2015) (quoting *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 706-07 (1986)). Plaintiffs do not attempt to establish that teaching yoga is expressive conduct or speech, but simply assume that it is.

4. Even if Plaintiffs can arguably show that the First Amendment applies to their claims, Plaintiffs cannot show that the City's legitimate public safety and conservation interests in enforcing the time, place, and manner restrictions resulting from the Challenged Ordinance do not "burden substantially more speech than is necessary to further the government's legitimate interests." *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989). The City's legitimate governmental interests in this case include the preservation, safety, and orderly use of its parks and beaches by all visitors and residents who visit them.

5. In addition to Plaintiffs' inability to establish that they are likely to succeed on the merits of their lawsuit, they are also unable to establish irreparable injury, that the balance of equities tips in their favor, or that an injunction is in the public's interest. Plaintiffs are asking this Court to issue a TRO under circumstances that do not warrant such an extraordinary remedy.

## II. STANDARD OF REVIEW

6. "A preliminary injunction is an extraordinary remedy" and is "never awarded as of right." *Winter v. Natural Resources Defense Council, Inc.* 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren,* 553 U.S. 674, 689-90 (2008). The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). A party seeking injunctive relief under Fed. R. Civ. P. 65 must show "'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20).

## III. ARGUMENTS

### a. Plaintiffs are Unlikely to Prevail because they Cannot Demonstrate that the First Amendment Applies to their Claims

7. As a preliminary matter, Plaintiffs must establish that the Challenged Ordinance regulates speech cognizable under the First Amendment. *B & L Productions*, 104 F.4th at 11. This is because the First Amendment only applies to "conduct with a 'significant expressive element' [that] drew the legal remedy or the [ordinance] has the inevitable effect of 'singling out those engaged in expressive activity.'" *Int'l Franchise Ass'n v. City of Seattle*, 803 F.3d 389, 408 (9th Cir. 2015) (quoting *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 706-07 (1986)).

8. The Challenged Ordinance here, San Diego Municipal Code § 63.0102(c)(14), makes it "unlawful to carry on or conduct commercial activity, to provide any service … or to require someone to negotiate, establish, or pay a fee before providing a service, even if characterized as a donation, without the written consent of the City Manager." The Challenged Ordinance does not mention or otherwise prohibit speech, much less teaching yoga, but rather regulates

commercial activity on City property by requiring permits. In arguing that teaching yoga is pure speech, Plaintiffs draw a distinction between "pure speech" and "conduct" and argue that "Plaintiffs here are engaged in pure speech, not conduct having nothing (sic) to do with speech." (Doc. No. 6-5 at p. 15.) This is not a distinction drawn in cases such as Plaintiffs because "restrictions on protected expression are distinct from restrictions on economic activity or, more generally, on non-expressive conduct." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011). While protected expression is entitled to protection, "the First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech." *Id.* Plaintiffs' conduct, teaching a yoga class, is activity that is regulated because it is commercial activity that gathers large groups of people. The Challenged Ordinance only incidentally, if in fact it does at all, burden speech.

9. The "threshold question" for this Court is whether Plaintiffs' conduct, which includes speech, has a "'significant expressive element' [that] drew the legal remedy or [whether] the [Challenged Ordinance] has the inevitable effect of 'singling out those engaged in expressive activity.'" *Int'l Franchise Ass'n*, 803 F.3d at 408. While Plaintiffs argue that the Challenged Ordinance is a "ban on teaching yoga in City parks and beaches," the purpose and effect of the ordinance is to prevent unpermitted commercial activity both by vendors, such as Plaintiffs, and vendees, such as the yoga class attendees. (Doc. No. 6-1 at p. 12; *See* SDMC § 63.0102(c)(14).) On its face, the Challenged Ordinance does not proscribe, mandate, or even discuss speech or the content of any commercial activity.

10. The City explained the "Purpose and Intent" of the Challenged Ordinance in Municipal Code § 63.0102(a) when it found that that "[i]t is the purpose and intent [of the City] in enacting this Division to regulate and prohibit certain activities in public parks and beaches within the City of San Diego in the interests of protecting the enjoyment and safety of the public in the use of these facilities, as well as the natural resources of the City of San Diego." Neither the

Challenged Ordinance or the statement of "Purpose and Intent" proscribe, mandate, or discuss speech or the content of any commercial activity.

11. A court may properly consider the "inevitable effect of [an ordinance] on its face," as well as an ordinance's "stated purpose." *Sorrell*, 564 U.S. at 565. "However, absent narrow circumstances, a court may not conduct an inquiry into legislative purpose or motive beyond what is stated within the statute itself." *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 685 (9th Cir. 2019) (internal citations omitted).

12. Here, Plaintiffs have asked this Court to review hundreds of pages of documents in 19 exhibits in Plaintiffs' Request for Judicial Notice, 16 of which relate to the "legislative purpose or motive" for the Challenged Ordinance (Doc. No. 6-5.) Plaintiffs' exhibits 1 through 5 and 7 through 17 in its Request for Judicial Notice relate to the legislative purpose of the Challenged Ordinance and should be disregarded by this Court because they fall outside of a proper inquiry for a constitutional challenge such as in this case and runs afoul of the prohibition in Rule 201 against taking judicial notice of a "legislative fact." Fed. R. Civ. P. 201(a). Plaintiffs' Exhibit 6, a Notice of Impoundment from the City of Orange, appears to have been included by mistake. (Doc. No. 6-5 at pp. at 44-46). Plaintiffs' Exhibit 6-2, an affidavit filed by Plaintiffs' counsel, also contains numerous improper references to the legislative purpose of the Challenged Ordinance. (Doc. No. 6-2 at ¶¶ 9-31.) Exhibit 1 to Plaintiffs' Exhibit 6-2 is an email exchange between counsels for Plaintiffs and the City, which also contains references to the legislative purpose of the Challenged Ordinance and should also be disregarded.

13. The Challenged Ordinance is plainly a regulation that covers commercial activity. The "inevitable effect of the [Challenged Ordinance] on its face" is to regulate non-expressive conduct—namely, commercial activity on the City's parks and beaches —not speech. *See Sorrell*, 564 U.S. at 565. Similarly, the central purpose of the Challenged Ordinance is "to regulate and prohibit certain

activities in public parks and beaches within the City of San Diego in the interests of protecting the enjoyment and safety of the public in the use of these facilities, as well as the natural resources of the City of San Diego." SDMC § 63.0102(a). As a result, the only inevitable effect and purpose of the Challenged Ordinance is to regulate unpermitted commercial activity on City property such as that engaged in by Plaintiffs.

14. This Court recently addressed a similar case also based on a First Amendment challenge to a statute that regulated personal training in a gym, an activity identical to teaching yoga, and found that such activity is not expressive activity. *Steel MMA, LLC v. Newsom*, Case No.: 21-CV-49-CAB-AGS, 2021 WL 778654 (S.D. Cal. Mar 01, 2021). This Court specifically found that "Plaintiffs [] failed to establish that the First Amendment protects their operation of gyms or that working out/exercising/**personal training** indoors in a gym is speech or expressive activity protected by the First Amendment." *Steel MMA, LLC*, 2021 WL 778654, at *4 (emphasis added). Plaintiffs arguments similarly fail here because their arguments, just as those made by the Plaintiffs in *Steel MMA, LLC*, fail to establish that teaching yoga, a form of personal training, is expressive activity. Plaintiffs' activity here, although conducted outdoors and on public land, is exactly the same activity Plaintiffs would engage in if they were to conduct it on private property, in a gym, and with the same individuals who attend their classes on the City's public beaches. Being outdoors and on public land does not alter the character of Plaintiffs' conduct and change it from non-expressive conduct to expressive conduct that is protected by the First Amendment.

15. Plaintiffs argue, without explanation or foundation, that "teaching yoga in a public forum is expressive activity protected by the First Amendment and is not the same thing as 'operating a gym.'" (Doc. No. 6-5 at p. 15.) In making this unsupported argument, Plaintiffs highlight their inability to establish that "conduct with a 'significant expressive element' drew the legal remedy" of the Challenged

1  Ordinance." *Int'l Franchise Ass'n*, 803 F.3d at 408. In both *Steel MMA, LLC* and in
2  this case, the challenged law reached the conduct both sets of plaintiffs argued was
3  protected First Amendment activity. The acts of operating a gym and teaching
4  yoga—speech included—are equivalent and the fact that one occurred in a
5  commercial gym and the other on a public beach is immaterial to the conclusion
6  that both activities are neither expressive activity or speech.
7      16.    The Challenged Ordinance does not, within its text, regulate speech.
8  What it does regulate, but not ban, is commercial activity. The Challenged
9  Ordinance is therefore "[a] regulation that serves purposes unrelated to the content
10 of expression is deemed neutral, even if it has an incidental effect on some speakers
11 or messages but not others." *Ward v. Rock Against Racism*, 491 U.S. 781,
12 791(1989). The Challenged Ordinance does not mention, much less favor, any
13 expressive activity or speech and is content neutral even if it incidentally affects
14 speech. "A content-neutral regulation will be sustained under the First Amendment
15 if it advances important governmental interests unrelated to the suppression of free
16 speech and does not burden substantially more speech than necessary to further
17 those interests." *Turner Broad. Sys., Inc. v. F.C.C.*, 520 U.S. 180, 189 (1997).

### b. Plaintiffs Cannot Show Irreparable Injury

19     17.    Plaintiffs "must establish that irreparable injury is *likely* in the absence
20 of an injunction." *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 22
21 (2008) (internal citations omitted) (emphasis in original). Even if teaching yoga was
22 arguably expressive activity, they would still not suffer irreparable injury because
23 they would not be prevented from teaching yoga as a result of the Challenged
24 Ordinance, which is not, despite Plaintiffs repeated claims to the contrary, a ban.
25 Plaintiffs can obtain a permit—as many other fitness instructors already do—in
26 order to teach yoga in a one of the more than 60 areas designated by the City for
27 fitness activities. As more fully argued below, the City's time, place and manner
28 restrictions are promulgated through enforcement of the Challenged Regulation and

are reasonable because they were narrowly drawn and adopted for legitimate governmental reasons. *Sundance Saloon, Inc. v. City of San Diego*, 213 Cal. App.3d 807, 817 (1989).

18. If this Court found that the Challenged Ordinance violated Plaintiffs' First Amendment rights, Plaintiffs would still have an adequate remedy at law in the form of a refund of the fees collected for the use of the City's designated venues. "[E]conomic loss along will rarely constitute irreparable harm …." "because economic injuries are generally reparable with monetary damages in the ordinary course of litigation." *Naegele v. Albers*, 843 F. Supp2d 123, 129 (2012.) Plaintiffs cannot show that they will suffer irreparable injury even if this Court finds that teaching yoga is an expressive activity because they are not actually banned from teaching yoga in the City's parks and beaches, and because the economic injury they would suffer by paying the City for a permit is reparable.

19. If this Court finds that Plaintiffs failed to make a sufficient showing of irreparable injury, it may summarily deny the motion for injunctive relief without considering the other factors. *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C.Cir.1995).

### c. The Balance of Equities Favors the Denial of Plaintiffs Request for a TRO

20. The purpose of a temporary restraining order is to preserve the status quo before a preliminary injunction hearing may be held and its provisional remedial nature is designed merely to prevent irreparable loss of rights prior to judgment. *See Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974) (noting a temporary restraining order is restricted to its "underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer.") The status quo in this matter is that the Challenged Ordinance is in effect because most individuals who want to personally train in City parks obtain a permit to do so.

### d. The Grant of a TRO is Not in the Public's Interest

21. The final preliminary injunction factor requires that Plaintiffs show that the balance of equities tips in their favor and that an injunction would advance the public interest. *Winter*, 555 U.S. at 20. The balance of equities factor focuses on "the effect of each party of the granting or withholding of the requested relief." *Id*. at 24. By contrast, "[t]he public interest inquiry primarily addresses impact on non-parties rather than parties." *League of Wilderness Defs./Blue Mountains Biodiversity Project. v. Connaughton*, 752 F.3d 755, 756 (9th Cir. 2014) (internal citations omitted.) When the government is a party, the analysis of these two factors merges. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014.) Thus, this Court must consider what "public consequences" would result from issuing an injunction. *See Winter*, 555 U.S. at 24.

22. The City and County of San Diego welcomed almost 32 million visitors in 2023 and the County is home to approximately 3.3 million residents.[2] Many visitors and residents to San Diego County visit the City's parks and beaches on a daily basis, more so during the summer. In order to preserve its parks and beaches for use by all of its visitors, the City must be able to regulate and maintain its venues consistent with its duty to maintain availability for all visitors.

23. Plaintiffs request for a TRO and ultimate request for relief is inconsistent with equal access to the City's parks and beaches for all visitors. Plaintiffs make the case that they should decide the time, place, and manner of their yoga classes absent any consideration for other individuals who may use the same parks or beaches. In addition, Plaintiffs request for a TRO also impacts individuals who may want to visit the same venue where Plaintiffs hold their yoga classes. A conflict will occur if these individuals obtain a permit to hold a yoga class at the same time and place Plaintiffs unilaterally decided to hold theirs without a permit.

---

[2] San Diego Tourism Authority: Industry Research – General Facts https://www.sandiego.org/about/industry-research.aspx (last visited on Jul. 3, 2024.)

### e. The Challenged Ordinance is an Appropriate Time, Place, and Manner Restriction

24. If this Court determines that teaching yoga is an expressive activity, the City's permitting process, as operated under the Challenged Ordinance, provides reasonable time, place, and manner restrictions. The City's parks and beaches are public fora where "the government may impose reasonable restrictions on the time, place, or manner of protected speech." *Ward*, 491 U.S. at 791. The City's principal justification for the Challenged Ordinance, as well as related ordinances for the use of park areas, in the City's municipal code is "to regulate and prohibit certain activities in public parks and beaches within the City of San Diego in the interests of protecting the enjoyment and safety of the public in the use of these facilities, as well as the natural resources of the City of San Diego." SDMC § 63.0102(a).

25. Section 63.0102 of the City's municipal code, which includes the Challenged Ordinance, regulates the use, preservation, and enjoyment of the City's parks and beaches by regulating loose animals, fireworks, dumping, littering, the use of kindle to start fires, unpermitted sports events, and car washing, among other activities. SDMC § 63.0102. All the individuals who enter the City's "parks must abide by otherwise valid rules for their use, just as they must observe the traffic laws, sanitation regulations, and laws to preserve the public peace." *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 298 (1984). The Challenged Ordinance works in concert with related ordinances to further the City's stated goal of preserving City parks for use by all visitors to the City's parks and beaches. This is because the City has "a substantial Government interest in conserving park property, an interest that is plainly served by, and requires for its implementation, measures such as [] proscription[s] … that are designed to limit the wear and tear on park properties. That interest is unrelated to suppression of expression." *Id*.

26. Plaintiffs also appear to argue that the City's permitting system is impermissibly restrictive, and thus invalid, because "the City only grants permits in few parks, and none in shoreline parks." (Doc. 6-1 at p. 5.) Plaintiffs' assertion is incorrect and also exhibits their belief that they should be allowed to independently select the time, place, and manner of their yoga classes at the City's parks and beaches absent any regulation or input from the City. This is an improper request of this Court because neither "*United States v. O'Brien* or the time, place, or manner decisions assign to the judiciary the authority to replace the [City's Park and Recreations Department] as the manager of the [City's] parks or endow the judiciary with the competence to judge how much protection of park lands is wise and how that level of conservation is to be attained." *Clark*, 468 U.S. 299.

27. The Challenged Ordinance is a content-neutral regulation and constitutional "if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *United States v. O'Brien*, 391 U.S. 367, 377 (1968). The Challenged Ordinance furthers the City's substantial government interest of preserving the City's parks and beaches and is unrelated to the suppression of free expression.

## IV.  CONCLUSION

Plaintiffs' request for TRO is not consistent with the requirements for this Court to grant such extraordinary relief. Plaintiffs request should be denied.

Dated: July 3, 2024                              MARA W. ELLIOTT, City Attorney

By /s/ Manuel Arambula
  Manuel Arambula
  Deputy City Attorney

  Attorneys for Defendant
  City of San Diego