**PEASE LAW, APC**
Bryan W. Pease (SBN 239139)
Parisa Ijadi-Maghsoodi (SBN 273847)
3960 W. Point Loma Blvd., Suite H-2562
San Diego, CA 92110
Ph. (619) 723-0369 / (619) 991-9517
Email: bryan@peaselaw.org, parisa@peaselaw.org

Attorneys for Plaintiffs Steven Hubbard and Amy Baack

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| STEVEN HUBBARD and AMY BAACK,<br><br>           Plaintiffs,<br><br>v.<br><br>CITY OF SAN DIEGO and DOES 1-10,<br><br>     Defendants. | Case No. 24-CV-00972-L-SBC<br><br>**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |
|---|---|

**Table of Contents**

I. INTRODUCTION ...................................................................................................... 4

II. FACTUAL BACKGROUND .................................................................................... 4

III. ARGUMENT .............................................................................................................. 5

    A.   Plaintiffs have adequately alleged a First Amendment violation ........................... 5

    B.   The ordinance lacks objective time, place, and manner criteria ............................ 12

    C.   Doe Defendants have yet to be identified ............................................................. 13

    D.   Declaratory relief is also appropriate .................................................................... 14

    E.   Defendant has not filed a motion to strike…………………………………….....14

IV. CONCLUSION ......................................................................................................... 15

# Table of Contents

**Cases**

*ACLU v. City of Las Vegas* (9th Cir. 2006) 466 F.3d 784 .................................................. 10

*Best Supplement Guide, LLC v. Newsom*, No. 2:20-cv-00965-JAMC-KD, 2020 WL 2615022 (E.D. Cal. May 22, 2020) ........................................................................... 6, 10

*Bolger v. Youngs Drug Products Corp.* (1983) 463 U.S. 60 ................................................ 9

*City of Chicago v. Morales* (1999) 527 U.S. 41 ................................................................ 14

*Consol. Edison Co. v. Public Serv. Comm'n* (1980) 447 U.S. 530 ..................................... 9

*Corales v. Bennett* (2009) 567 F.3d 554 ............................................................................ 14

*Edge v. City of Everett* (9th Cir. 2019) 929 F.3d 657 ....................................................... 10

*Kuba v. 1-A Agr. Ass'n* (9th Cir. 2004) 387 F.3d 850 ......................................................... 9

*Lim v. City of Long Beach* (9th Cir. 2000) 217 F.3d 1050 ................................................. 9

*Steel MMA, LLC v. Newsom*, Case No.: 21-CV-49-CAB-AGS, 2021 WL 778654 (S.D. Cal. Mar 01, 2021) ...................................................................................................... 5, 10

*Texas v. Johnson* (1989) 491 U.S. 397 .............................................................................. 11

*United States v. Washington* (9th Cir. 2004) 387 F.3d 1060 ............................................ 14

*Vill. of Schaumburg v. Citizens for a Better Env't* (1980) 444 U.S. 620 ........................... 10

*Ward v. Rock Against Racism* (1989) 491 U.S. 781 ........................................................ 8, 9

**Statutes**

SDMC §63.0102 .................................................................................. 4, 5, 9, 10, 12

## I. INTRODUCTION

Defendant City of San Diego ("Defendant" or "City") has not filed a notice of motion or motion. Instead, Defendant filed only a memorandum of points in authorities in support of a nonexistent motion to dismiss Plaintiffs' First Amended Complaint (FAC). There is also no notice of hearing date by which to calculate an opposition due date, but Defendant did note a date of September 4, 2024 in the caption of the memo. Accordingly, Plaintiffs will calculate the opposition date based on that date and treat the memorandum of points and authorities as if it were a motion.

The second and third causes of action are individual claims not asserted against the City, but rather asserted against individual park rangers and their supervisors. These claims include not just First Amendment violations, but also violation of the Fourth and Fourteenth Amendments. The City has not addressed the Fourth and Fourteenth Amendment claims, as these claims are not asserted against the City, but rather against yet to be identified Doe Defendants, who are park rangers and their supervisors.

## II. FACTUAL BACKGROUND

Amendments passed earlier this year to SDMC §63.0102(c)(14) specifically target *teaching* yoga as requiring a permit if four or more persons are involved, regardless of whether or not the instructor accepts donations or charges a fee. In practice, the City only grants permits in a few parks, and none in shoreline parks.

This is not a content-neutral time, place, and manner regulation. Rather, it is content-based, explicitly targeting "teaching yoga" in a public forum.

Yoga is much more than a physical practice, and teaching yoga involves imparting the philosophy of yoga and other messages that are understood by the listener. (ECF No. 13, ¶¶14, 19, 20, 33.)

Offering free and donation-based classes in public parks is a way to involve the public in the practice of yoga and allow those who cannot afford to join a private studio or private session prices a way to still learn about the practice of yoga. (ECF No. 13, ¶¶12, 16, 18, 34.)

Many people have learned about yoga for the first time in these outdoor classes the City has now banned. (ECF No. 13, ¶¶18, 34.)

Contrary to what the City erroneously stated at the preliminary injunction hearing in this matter, and appears to imply on page 6, line 25 of its brief, Plaintiffs cannot simply obtain a permit to engage in the type of speech at issue. The City does not allow *any* such permits in shoreline parks or beaches. (FAC, ¶¶28-31, 42, 81.)

### III.   ARGUMENT

#### A.   Plaintiffs have adequately alleged a First Amendment violation

SDMC §63.0102(c)(14) now requires a permit to engage in any of the following three distinct categories of activity: 1) "commercial activity," 2) "provide any service," and 3) "to require someone to negotiate, establish, or pay a fee before providing a service, even if characterized as a donation."

The newly amended ordinance specifically defines "yoga" as a "service" in §63.0102(b), so it does not matter if an individual is not engaged in commercial activity or even accepting donations to teach yoga. The mere act of "providing" yoga in a City park is prohibited under the clear wording of this new ordinance, and this is also the manner the City is applying the ordinance. (ECF No. 13, ¶¶24, 39, 40.)

Further, the exception for "expressive activity" explicitly labels *teaching* yoga unprotected speech, because the definition of expressive activity in the ordinance specifically excludes "teaching yoga." (SDMC §63.0105.)

The City relies heavily on *Steel MMA, LLC v. Newsom*, Case No.: 21-CV-49-CAB-AGS, 2021 WL 778654 (S.D. Cal. Mar 01, 2021), and *Best Supplement Guide, LLC v. Newsom*, No. 2:20-cv-00965-JAMC-KD, 2020 WL 2615022 (E.D. Cal. May 22, 2020).

The issue in those cases was operating commercial private gyms, not free speech in a public forum. To the extent those cases were based on finding in any way that teaching yoga is not protected speech, such finding may have been based on a different aspect of the constitutional analysis or on different facts. The outcome of those cases was unquestionably correct, as the government has a compelling interest in avoiding the

public health threat at the time of people convening inside confined spaces and breathing heavily around each other. However, while the outcome of those cases was correct, the constitutional analysis may have not been fully performed, or the facts may have been inapposite.

While the constitutional analysis would have been satisfied regardless in those cases due to the substantial government health interest at stake, such analysis still needs to be fully performed in the present case where there is no such substantial interest. Because the ordinance here is explicitly content-based, specifically targeting teaching yoga, the City must show a *compelling* government interest as well as means that are narrowly tailored to serve that interest, while leaving open ample alternative means of communication. (*Ward v. Rock Against Racism* (1989) 491 U.S. 781, 791.) Even without a content-based restriction requiring strict constitutional scrutiny, this case involves *teaching* (i.e. words being spoken) in a public forum, and the City must at a minimum show a substantial government interest served by narrowly tailored means. (*Ibid.*)

The City has not and cannot do so, as alleged in the FAC. (ECF No. 13, ¶¶80, 82, 83.) Accordingly, the complaint adequately alleges a First Amendment violation with this ordinance on its face as well as how it is being applied.

The City continues to assert, despite the newly added allegations in the FAC, that "Plaintiffs [sic] FAC summarily assumes, without explaining why, teaching yoga is an activity protected by the First Amendment." (ECF No. 19, p.7:10-11.)

Besides "teaching" constituting speech by definition, this ignores the following newly added allegations of the FAC:

- "Baack also teaches the mind-body connection and how our thoughts affect how we feel and what we experience." (ECF No. 13, ¶13.)

- "Plaintiffs encourage students to practice mindfulness, noticing the sound of the ocean waves, the feeling of the ground beneath you, the temperature of the breeze, your breath as it flows in and out in sync to the movements. This brings more awareness to your body, your inner life and emotions, and to the experiences of others. Mindfulness also helps with focus and being in

- the moment. Plaintiffs teach their students to practice this by holding certain challenging poses or by taking a deep controlled breath in a resting pose, for example." (ECF No. 13, ¶14.)

- "Plaintiffs also teach proper breathing awareness and mechanics, which also has positive effects on your vagus nerve and healing your sympathetic nervous system, as well as managing stress. Plaintiffs instruct students on breathing slowly through their nose and activating the full expanse of their diaphragm, instead of breathing shallowly into their chests as many people do. All yoga classes end with Savasana, a meditation, in which students lie on the ground with their eyes closed, practicing being with their breath and finding peace, a moment of stillness." (ECF No. 13, ¶15.)

- "Yoga is not only a mental and physical practice, but a spiritual one as well. The philosophy of yoga was developed to teach humans how to free ourselves from suffering and find unity (the word yoga translates to 'to unite/yolk') with our mind/body/spirit and with the universe. This ancient Indian philosophy promotes finding peace within in order to connect more with all that is around you; the movement of the body was added as part of the practice in order to make it easier to find peace in the mind. The foundational yoga texts we use include moral codes (called Yamas and Niyamas) that instruct yogis on how to live a better more fulfilled life, including: to be of service to others, to be free of negativity and selfishness, to be truthful, to practice gratitude and non-harm, and more. All of this makes yoga specifically more than a "fitness" activity and instead more of a philosophy." (ECF No. 13, ¶19.)

- "These are all things Plaintiffs talk about throughout class, like during a seated introduction at the start of class before we get moving, Plaintiffs will bring up an idea or philosophy for the week for students to reflect on throughout class. Then Plaintiffs will touch back on it while they are holding a pose and deep in focus, or during resting poses or in Savasana at the end." (ECF No. 13, ¶20.)

The City claims Plaintiffs must "address or argue why they were treated differently than a masseuse, a dog trainer, or a fitness instructor who would be subject to a citation if they engaged in the same conduct—the unpermitted provision of services on City property." (ECF No. 19, p.15:11-14.)

7
OPPOSITION

However, this is not the relevant inquiry, as those specific activities are also explicitly targeted by the ordinance. The relevant inquiry is whether people engaging in a different type of *speech*, such as holding a rally, poetry reading, birthday party, or other gathering, would be treated differently, while substantially the same impact on park use through teaching yoga is prohibited.

Additionally, the FAC alleges the City has been allowing a large corporation, Fit, to conduct yoga classes on Mission Beach without a permit, even using large loudspeakers on the sand. (ECF No. 13, ¶¶41-42.) The FAC specifically alleges discriminatory treatment favoring "a large nearby business." (ECF No. 13, ¶43.) The City ignores these newly added allegations and appears to have simply cut and pasted its earlier argument from its motion to dismiss Plaintiffs' original complaint

Indeed, the City's brief still refers in parts to the "OC," i.e. original complaint, as opposed to the operative FAC. (ECF No. 19, pp.8:15, 19:7.)

A time, place, or manner regulation may not "burden substantially more speech than is necessary to further the government's legitimate interests." (*Ward v. Rock Against Racism* (1989) 491 U.S. 781, 799.)

"The government may place reasonable time, place, and manner restrictions on speech. However, these restrictions must be justified without reference to the protected speech's content. They must be content-neutral and narrowly tailored to serve a significant government interest, leaving open ample alternative channels of expression." (*ACLU* at 792.)

"A content-based regulation, on the other hand, is 'presumptively unconstitutional' [Citation], and subject to strict scrutiny [citation]. 'Content-based regulations pass constitutional muster only if they are the least restrictive means to further a compelling interest.' [Citation]." (*Ibid.*)

The party seeking to limit the exercise of free speech bears the burden of justifying the limitation. (*See, e.g., Bolger v. Youngs Drug Products Corp*. (1983) 463

U.S. 60, 71 n.20 ("The party seeking to uphold a restriction on commercial speech carries the burden of justifying it."); *Kuba v. 1-A Agr. Ass'n* (9th Cir. 2004) 387 F.3d 850, 860 ("the Association … has difficulty meeting its burden regarding the significance of its asserted interest."); *Lim v. City of Long Beach* (9th Cir. 2000) 217 F.3d 1050, 1054 ("the party seeking to restrict protected speech has the burden of justifying that restriction."))

"[A] content-neutral restriction—i.e., one which concerns the time, place, or manner of speech—is subject to intermediate scrutiny." (*Ward v. Rock Against Racism* (1989) 491 U.S. 781, 791.) "The restriction must (1) be narrowly tailored, (2) serve a significant government interest, and (3) leave open ample alternative avenues for communication of the information." (*Ibid*.)

"But when regulation is based on the content of speech, governmental action must be scrutinized more carefully…a constitutionally permissible time, place, or manner restriction may not be based upon either the content or subject matter of speech." (*Consol. Edison Co. v. Public Serv. Comm'n* (1980) 447 U.S. 530, 536.)

Not only does the recent amendment to SDMC §63.0102 specifically targeting the teaching of yoga fail to pass the intermediate scrutiny test; it is also impermissibly content-based, singling out "teaching yoga," and appears to be based on forces within the City disagreeing with the teaching of yoga in a public forum. (ECF No. 13, ¶37.)

Plaintiffs are engaged in pure speech, teaching yoga to anyone who wishes to listen and participate. They are not charging fees, and they are not blocking or restricting access to any public space. (ECF No. 13, ¶¶8, 10, 12, 34, 40.)

Nor does accepting donations alter the equation. "It is beyond dispute that solicitation is a form of expression entitled to the same constitutional protections as traditional speech." (*ACLU v. City of Las Vegas* (9th Cir. 2006) 466 F.3d 784, 792.)

"Our cases long have protected speech even though it is in the form of a solicitation to pay or contribute money." (*Vill. of Schaumburg v. Citizens for a Better Env't* (1980) 444 U.S. 620, 633 (cleaned up).)

The fact that the City is targeting speech here and not merely conduct that may have expressive value is also made clear by a park ranger citing Hubbard not only for violation of §63.0102(c)(14) regarding providing "services," but also §63.0102(c)(15) regarding giving a "lecture." (ECF No. 13, ¶39.) The only thing Hubbard was doing at the time that led to the issuance of the ticket was teaching yoga in a City park. (*Id.,* ¶40.)

The City's motion to dismiss relies primarily on a health restriction case during the pandemic in which this Court found private gyms "failed to establish that the First Amendment protects their operation of gyms or that working out/exercising/personal training indoors in a gym is speech or expressive activity protected by the First Amendment." (*Steel, supra*, *7.)

*Steel* is inapposite because it is limited to activities inside a commercial gym which requires a membership fee to enter, not teaching yoga in a public forum.

The City also relies on *Best Supplement Guide, supra*, which held, "The Court lacks any authority for the proposition that operating a gym implicates the First Amendment's free speech protections." (*Id.* at *11.)

Again however, teaching yoga in a public forum is expressive activity protected by the First Amendment and is not the same thing as "operating a gym."

The City also ignores that teaching yoga is pure speech, i.e. the instructor is literally speaking and the students are listening. Yet the City relies on cases holding that certain *conduct* is not sufficiently expressive to warrant First Amendment protection.

For instance, the City cites *Edge v. City of Everett* (9th Cir. 2019) 929 F.3d 657, which analyzed *conduct*, not speech. "The outcome of this case turns on the plaintiffs' contention that the act of wearing almost no clothing while serving coffee in a retail establishment constitutes speech." (*Id.* at 669.)

Not surprisingly, the Ninth Circuit held, "Because wearing pasties and g-strings while working at Quick-Service Facilities is not 'expressive conduct' within the meaning of the First Amendment, the Dress Code Ordinance does not burden protected expression." (*Ibid.*)

1 *Edge* is inapposite because Plaintiffs here are engaged in pure speech, not conduct
2 having nothing to do with speech.
3     *Edge* also quoted *Texas v. Johnson* (1989) 491 U.S. 397, as noted by the City. This
4 was the high court's seminal flag burning case, striking down a law against desecration of
5 the U.S. flag. Again the issue there was conduct, not pure speech, and in *Texas* the
6 conduct, i.e. flag burning, was sufficiently imbued with communicative aspects that it
7 was protected under the First Amendment.
8     Thus, under the City's argument, Plaintiffs could stand in the exact same location
9 and burn a flag, but the minute they start telling anyone around how to practice yoga,
10 they are no longer engaged in protected speech and can be cited or arrested.
11     The City acknowledges Plaintiffs were teaching yoga "outdoors and in a public
12 park" but claims such teaching is not protected because it is "exactly the same activity
13 Plaintiffs would engage in if they were to conduct it indoors, in a gym, and with the same
14 yogis who now attend their classes on the City's beaches." (ECF No. 19, p.10:4-7.)
15     However, finding that conduct in a private commercial setting is not protected by
16 the First Amendment is not a basis on which to find speech in a public forum is
17 unprotected. As discussed above, the constitutional analysis was easily met in the
18 pandemic cases, even if shortcuts were made, because a compelling government interest
19 was at stake in protecting public health, and only a substantial government interest was
20 needed. Here, there is not even a substantial interest, and the means are not narrowly
21 tailored to achieve any such interest.
22     Additionally, the City's argument is factually incorrect and contradicts the
23 allegations of the FAC, as teaching yoga for free in a public forum exposes a larger
24 audience to this message than would benefit from it otherwise, as many people are
25 intimidated at the thought of joining a closed indoor yoga class. (FAC, ¶¶12, 16, 18, 34.)
26 Plaintiffs specifically choose to engage in this speech in a public forum in order to share
27 the message of yoga with a wider audience. (*Ibid*.)
28     The City contends, "Municipal Code section 63.0102 does not, within its text,

11
OPPOSITION

regulate speech. What it does regulate, but not ban, is commercial activity." (ECF No. 19, p.11:12-13.) Both contentions are erroneous.

SDMC §63.0102 does within its text regulate speech, because it defines "services" as "provision of intangible items" including specifically, "yoga." As explained in the declarations submitted herewith, Plaintiffs' provision of yoga to the public for free or with optional donations involves pure speech—i.e. words being spoken—in a public forum. These words are not merely instructing students on what poses to engage in, but also communicate the philosophy of yoga. (FAC, ¶¶8, 13, 14, 15, 19, 20, 33.)

Further, SDMC §63.0502 specifically excludes "*teaching* yoga"—pure speech— from the definition of "expressive activity" to which SDMC §63.0102 does not apply. Thus, the text of SDMC §63.0102 does in fact regulate speech.

Regarding regulation of "commercial activity," while SDMC §63.0102 does this *also*, that is a separate provision from the portion banning the providing of "services" such as "yoga," and "teaching yoga" as stated in SDMC §63.0502.

Thus, while SDMC §63.0102(c)(14) *also* makes it "unlawful to carry on or conduct commercial activity," as well as "to solicit offers to purchase, barter, or to require someone to negotiate, establish, or pay a fee before providing a service," this is in *addition to* the functionally separate ban on even just "providing a service."

The other two categories prohibited by §63.0102(c)(14) are irrelevant to this case, i.e. "commercial activity" or charge "a fee before providing a service." Also irrelevant here is the banning of providing other "services" even without charging a fee, which do not involve expressive activity. The First Amendment violation at issue here arises from the City's explicit ban on "teaching yoga" in parks.

### B. The ordinance lacks objective time, place, and manner criteria

The City misconstrues Plaintiffs' unbridled discretion argument, asserting that the ordinance calls for no discretion to be exercised, because the ordinance is clear and a permit can be obtained. However, it is the issuance of a permit language that vests unbridled discretion in the City Manager, i.e. the Park and Recreation Department under

the Mayor's office now that San Diego has a strong mayor form of government.

In practice, the City has declared there to be no time, place, or manner in which Plaintiffs can teach yoga in any shoreline park or beach, and has only designated very specific areas far from Plaintiffs' target audience as parks where such permits can be obtained.

Yet, there is no objective, written criteria for making this arbitrary rule, and no indication the City Council intended in passing this ordinance to enact a complete ban on teaching yoga in all shoreline parks and beaches at all times. Accordingly, the ordinance fails for this reason as well.

### C. Doe Defendants have yet to be identified

The City states in a footnote that it "does not address Plaintiff's Second or Third Causes of Action because they are only levied against Doe defendants." (ECF No. 19, p.7, fn1.) However, the City then goes on to do just that later in its brief, claiming the individual liability causes of action are "improperly pled." (ECF No. 19, p.15:24.)

First the City erroneously asserts that Plaintiffs did not allege ignorance of the true names of the Doe Defendants. (ECF No. 19, p.16:2-4.) Plaintiffs made exactly this allegation in their FAC, as well as the original complaint. (ECF No. 13, ¶6.)

Next, the City erroneously argues "there is no 'individual liability' in a 42 U.S.C. § 1983 lawsuit because such relief must be pled under *Monell*." (ECF No. 19, p.16:6-7.) What the City may have intended to say here is there is no *vicarious* liability under Section 1983. However, Plaintiffs have not pleaded vicarious liability. There are distinct causes of action, with *Monell* claims asserted against the City, and individual claims asserted against individual Doe Defendants.

Plaintiffs have also adequately alleged supervisory liability as to Doe Defendants.

"In a section 1983 claim, 'a supervisor is liable for the acts of his subordinates "if the supervisor participated in or directed the violations, or knew of the violations of subordinates and failed to act to prevent them." [Citation]. 'The requisite causal connection may be established when an official sets in motion a "series of acts by others

1 | which the actor knows or reasonably should know would cause others to inflict"
2 | constitutional harms.'" (*Corales v. Bennett* (2009) 567 F.3d 554, 570.)
3 |      In addition to violating Plaintiffs' First Amendment rights, the Doe Defendant
4 | park rangers and their supervisors violated Plaintiffs' Fourth Amendment rights by
5 | detaining and in some cases issuing them citations, thus restricting their liberty in a
6 | public park where others could move about freely, but Plaintiffs were prohibited from
7 | doing so do to the words they were speaking. (*See United States v. Washington* (9th Cir.
8 | 2004) 387 F.3d 1060, 1068.)
9 |      Doe Defendant park rangers and their supervisors also violated Plaintiffs'
10 | Fourteenth Amendment rights to remain in a place of their choosing. (*See City of*
11 | *Chicago v. Morales* (1999) 527 U.S. 41, 54.)
12 |      Plaintiffs will more fully brief these issues when these parties are before the
13 | Court.

     **D.**    **Declaratory relief is also appropriate**

     While the first cause of action could be considered duplicative of declaratory relief as to the City, there is still a need for a declaratory relief cause of action as to Doe Defendants in case those Defendants successfully assert a defense of qualified immunity. Declaratory relief may be the only way in which Plaintiffs can make an as applied constitutional challenge if the Court finds the ordinance is not facially unconstitutional, and if Doe Defendants have qualified immunity regarding the manner in which they are applying it, even if unconstitutional. Accordingly, the declaratory relief cause of action should remain.

     **E.**    **Defendant has not filed a motion to strike**

     Defendant argues in a portion of its brief that "Plaintiffs [sic] FAC contains numerous allegations that should be struck." (ECF No. 19, p.19:11.)

     Plaintiffs disagree, but Defendant has not filed a motion to strike, so Defendant's grievances do not need to be addressed here.

## IV. CONCLUSION

For the foregoing reasons, Defendant should be required to answer the FAC. If the Court finds any of Plaintiffs' causes of action are not adequately alleged, Plaintiffs respectfully request leave to amend their complaint.

Dated: August 21, 2024                    By:   s/ Bryan W. Pease
                                                Bryan W. Pease, Esq.
                                                Attorney for Plaintiffs